## No. 11,199.

WILLIAM J. BEATTY ET AL. VS. CORNELIUS HAWKINS ET ALS.

The items which figure on the credit side of an account furnished by an agent at the instance of the heirs of his principal are not barred by the prescription of either three or five years.

Where a principal in a written instrument dated in 1884 acknowledging himself to be then indebted to his agent for his services authorizes him to pay the debt and interest from the net profits of a plantation of which he continues him the management and the possession, the heirs of the principal can not successfully plead against such claim either the prescription of three or five years, when at their instance and being still in possession he renders them an account and net profits to cover his claims are not shown.

APPEAL from the Fourteenth District Court, Parish of Iberville. *Talbot, J.*

*H. N. Sherburne* for Plaintiffs and Appellees.

*D. H. Cross, Voist & Claiborne* and *Cross & Cross* for Defendants and Appellants.

The opinion of the court was delivered by

NICHOLLS, C. J.    This action is instituted by William J. Beatty, alleging himself to be the executor of the estate of Robert Beatty, Sr., who died in the State of South Carolina, place of his domicil, in March, 1890, joined by a number of persons, most of whom are residents of that State and none of Louisiana, who aver themselves to be heirs of the said Beatty.

The petition represents that Glenn D. Peak, a resident of South Carolina, was agent of the late Robert Beatty for the management, collection of money due for the lease and general supervision of a plantation in the parish of Iberville, known as the West Oaks plantation.    That Robert Beatty, Sr., bought at sheriff's sale the above described West Oaks plantation on the 17th of April, 1869, and died in the month of March, 1890.

That Glenn D. Peak still holds possession of the said West Oaks plantation and refuses to deliver possession thereof to the heirs and executor of Robert Beatty, Sr.    That the said Peak has leased to Cornelius Hawkins the said West Oaks plantation for the present year (1891) for one-fourth of the cotton grown and gathered on said plantation this year.    That the said Peak leased to divers persons the said West Oaks plantation every year since and including the year 1866, for one-quarter of the crop of cotton raised and gathered on said plantation.    That said price of lease was more than twenty-five bales of cotton for each year.    That the said bales of cotton were worth more than $40 per bale, making the amount due petitioners on the cotton thus received $25,400.    That the said Peak leased fifty acres of land for cultivation of corn each year up to 1881, inclusive, at $5 per acre, and collected the amount of $3750 for said lease of corn land.    That Glenn D. Peak, fraudulently pretending to Robert Beatty, Sr., that the said West Oaks plantation produced no revenues, obtained from Robert Beatty, Sr., various amounts at various times, amounting in all to $2582, which the said Peak pretended to use for repairs and improvements upon the said West

33

Oaks plantation, whereas in truth and in fact the said amount of $6582 were used for the personal benefit of said Peak and not for repairs, etc. That possession of the West Oaks plantation has been demanded by petitioners of Cornelius Hawkins and Glenn D. Peak in vain. That the said Peak has failed and refuses to pay over to Robert Beatty, Sr., or to his heirs or executor any portion of the amounts hereinbefore mentioned and obtained through fraud and misrepresentation, or to render an account of his agency.

They therefore prayed that Peak and Hawkins be cited and that there be judgment decreeing the said West Oaks plantation to be the property of petitioners, and that they do have and recover possession of said plantation from said defendants. That a writ of possession issue and petitioners be placed in possession of said plantation. That there be judgment against Glenn D. Peak in favor of petitioners for the sum of $36,732.50. That Cornelius Hawkins be enjoined from paying to Peak any portion of the price of said lease of the West Oaks plantation for the present year (1891). That Glenn D. Peak be cited to appear and defend the suit through a curator *ad hoc* appointed to represent him.

Under the prayer of this petition Hardee Cross was appointed curator *ad hoc* to represent the absentee, Glenn D. Peak.

On the 7th January the defendant, Peak, through his attorneys, Yoist & Claiborne, with leave of court, filed a peremptory exception to the effect that plaintiffs are without capacity to maintain the suit.

1. Because the deceased, R. Beatty, Sr., left an estate in South Carolina which is under administration under the laws of that State. That his domicil was in South Carolina and an auxiliary administration is necessary in this State in order to liquidate the affairs of his succession in this parish (Iberville). And the proper representative is the executor appointed under his will. That he himself (Peak) is executor appointed under his will, which has been probated regularly in South Carolina.

2. Because plaintiffs'are not his heirs as alleged in their petition. That in view of a duly certified copy of said will, the same be registered and the execution ordered, and that exceptor be confirmed as executor and letters issue to him, and that plaintiff's demand be dismissed.

Plaintiffs alleging that the exceptions filed are in substance an

answer, moved that they be referred to the merits to stand as an answer.

By agreement of counsel the exceptions were overruled and the case was continued.   At the next term of court defendant filed an answer, first pleading the general issue, but admitting that he acted as agent for deceased, but that in 1884 he paid over the balance due him, and since that time his gestion is set forth in two exhibits, H and B, made part of his answer.   That Robert Beatty, Sr., at the time of his death owed a judgment against him in Pointe Cou-pee parish in suit of ——————, and also the share of Patsy Beatty, inherited by him, making in the aggregate $2000, and respondent was to receive salary as agent from 1884 at $500 per year, of which the share of Robert Beatty, Sr., was three-fifths or $300.   That Robert Beatty, Sr., signed a counter letter setting forth that whereas he had advanced moneys for prosecutions of suits and claims for the heirs of Dr. Jesse Beatty in Louisiana in bringing to sale the West Oaks property, and the title was taken in his name, he agreed to reconvey to the heirs who should pay their portion of such advances; that respondent accordingly paid one-third of the purchase price of said property, and said Robert Beatty, Sr., always recognized respondent as owner of said one-third, to which he intended to convey title.   That failing to do so he was responsible to respondent for the restoration of said purchase price; that on a fair settlement said estate of Beatty owes him at least $500, for which he reconvened and prayed for judgment against plaintiffs, each for his virile share, and for general relief.

In Exhibit "A" referred to, the defendant acknowledged to have received as agent from dates commencing February 23, 1885, and ending March 6, 1891, the sum of $6770.47, representing the pro-ceeds of 162 bales of cotton.

In Exhibit "B" the defendant credits himself with the sum of $3412.51 for taxes, lumber, merchandise and other bills alleged to have been paid by him for and on account of Robert Beatty, Sr.

The defendant, Hawkins, excepted peremptorily to plaintiffs' demand and moved the court that the suit and order of injunction prayed for be dismissed so far as he was concerned; (1) because he was simply the lessee of said plantation for the year 1891 for one-fourth of the cotton grown and gathered on said plantation for said year; (2) because he has paid over said rent cotton to the party

from whom he rented the plantation; (3) because no order for a writ of injunction was ever issued against him enjoining him from paying to Glenn D. Peak the portion of the price of the lease of the West Oaks plantation for the year 1891; (4) because upon a petition of all parties, plaintiffs and defendants, filed in court and order therein granted, said rent cotton was turned over to H. N. Sheburne, of counsel for plaintiffs, to be accounted for, and that therefore he is not concerned in the case one way or the other.

In May, 1892, the court, declaring that all parties consented thereto, dissolved the injunction and granted an order that the cotton now in the possession of the defendant, Cornelius Hawkins, for the year 1891, be shipped to G. W. Sentell & Co., New Orleans, by the sheriff of the parish for his account, and subject to the order of H. N. Sherburne.

In December, 1892, defendant, Peak, filed an amended answer, in which he declared that he found he was entitled to another credit of $147 for taxes paid in 1884 by him as agent, and prayed that he have judgment in accordance with the fact.

He filed a second amended answer, in which he declared that for the purpose of making his answer more explicit, that the amount paid by him to Robert Beatty, Sr., as well as can be stated (the same being paid at different times) was about $6500.

Plaintiffs next filed a plea of estoppel and prescription, in which they aver "that Glenn D. Peak is estopped from making any charge against the heirs of Robert Beatty, Sr., under Judgment No. 244, G. D. Peak vs. Margaret Young, late Fifteenth Judicial District Court of Pointe Coupee parish, by the allegations contained in the petition in said suit, and specially pleaded the prescription of three years against all items charged in exhibit marked "B," and five years against defendant's charge for services as agent, and also expressly plead the prescription of three, five and ten years against the claim made by defendant to be reimbursed for the one-third of the purchase price of the West Oaks plantation.

Admissions were placed of record "that the West Oaks plantation belongs to the heirs of Robert Beatty, Sr., and Mrs. Peak also being one of the heirs; that there were seven branches of heirs, of which Mrs. Peak was one and the plaintiffs the other six; that the accounts current marked A, B, C, D and E of Gumbel Bros. &

Mayer annexed to the testimony of Glenn D. Peak are true extracts from the books of said firm, also that the statement of defendant since 1884 is correct in regard to the amount of cotton received and the amount of money realized on it."

The case went to trial, resulting in a judgment in favor of the plaintiffs and against the defendant of a character such as to necessitate our making a special reference at this point to a particular piece of evidence introduced on the trial by the defendant, in support of the allegation of his answer that he acted as agent of Robert Beatty, Sr., " but in 1884 he paid over the balance due." The instrument is referred to throughout the proceedings as document "C,' and has, together with other papers bearing on the subject matter, been brought up in the original with the transcript. It is as follows:

" Received of Glenn D. Peak all the rents, profits and income from my Louisiana property in full satisfaction of his agency up to date, and as I am indebted to him in one-third of the sum or amount decreed in his favor in suit No. 244, Glenn D. Peak vs. M. A. Young et als., by the Fifteenth Judicial District Court, Pointe Coupee parish, La., the same being my part or portion of his claim for services as agent for heirs of Dr. Jesse Beatty, I hereby authorize and direct him as my agent in future for my Louisiana property to retain and apply all net rents, profits and income from my said property in Louisiana to the payment of said debt and interest thereon until paid. I by agreement with him was not be included in the above mentioned suit against the other heirs.    March 14, 1884.

R. BEATTY, SR.

During the progress of the trial the genuineness of the signature of Robert Beatty, Sr., to this paper was questioned, and the decision of the question became a vital one in the litigation.

We have stated that the judgment of the District Court was in favor of the plaintiffs and against the defendant, Peak. It was as follows:

"The law and the evidence being in favor of the plaintiffs and against the defendant, Glenn D. Peak, it is ordered and adjudged and decreed that the plaintiffs (naming them, but omitting William J. Beatty, as executor of the estate of Robert Beatty, Sr.) do have judgment against G. D. Peak, declaring, adjudging and decreeing the receipt reciting the payment in full of all indebtedness of G. D. Peak to Robert Beatty, Sr., on account of his agency of and for the property

of Robert Beatty, Sr., situated in Louisiana and marked "C," to be a forgery and of no effect. It is further ordered, adjudged and decreed that there be further judgment against G. D. Peak and in favor of the plaintiffs for the sum of $12,400, it being the value of 310 bales of cotton shipped from the West Oaks plantation, Iberville parish, by G. D. Peak to New Orleans, Louisiana, for his own account.

" It is further ordered, adjudged and decreed that there be further judgment against Glenn D. Peak in favor of plaintiffs for the additional sum of $6770, price of cotton sold by him from the West Oaks plantation and for his own account since March 14, 1884.

"It is further ordered, adjudged and decreed that this judgment be and the same is subject to a credit of $1065 in favor of Glenn D. Peak for taxes paid by him on the West Oaks plantation, and that all other demands made by him are rejected."

Defendant's motion for a new trial having been overruled he appealed, and has, besides, pleaded in this court the prescription of ten years "against the demand contained in plaintiffs' petition for rents and revenues of the West Oaks plantation, claimed to have been received by the defendant as agent of Robert Beatty, Sr."

The plaintiffs have asked no amendment of the judgment.

It will be seen from the preceding statement that a petitory action for the ownership and possession of the West Oaks plantation, coupled with a demand for the fruits and revenues thereof, has terminated in a moneyed judgment against the defendant, as upon a settlement and adjustment of all claims and pretensions between the plaintiffs (who are alleged to be the heirs of Robert Beatty, Sr.) and the defendant, Peak, and particularly in reference to his actions and doings as agent in Louisiana, of Robert Beatty, Sr., and in a judgment in which no allusion whatsoever has been made to the plantation. As Robert Beatty, Sr., lived in South Carolina and died there, leaving a last will and testament which has been probated in that State in which one of the plaintiffs (Wm. J. Beatty) was named one of the executors, and under which will it would appear that letters of executorship have issued to him; as all of the plaintiffs, with a few exceptions, and Glenn D. Peak and his wife (who is one of the heirs of Robert Beatty) all live where the testator died; as Peak himself (although he does seem to have accepted the trust) was named one of the executors of Robert Beatty, Sr., and the agency which has given rise to this litigation originated in South

Carolina, it would be difficult to understand why plaintiffs should have resorted to the courts of this State rather than to their own, where all the parties, their character, credibility and standing are known, and where Beatty's succession is under administration, were it not for an intimation in the pleadings that at one time the defendant laid claim to the ownership of one-third of the West Oaks plantation. This claim he has abandoned, and in lieu thereof has substituted a demand for the repetition of the price of said one-third, which he avers he had paid to Robert Beatty, Sr., in anticipation of a deed which was never passed.

The defendant has submitted the issues involved in the litigation to the court without objection.

The portion of the judgment condemning the defendant to pay the sum of $12,400 as the value of 310 bales of cotton, shipped from the West Oaks plantation, Iberville parish, by G. D. Peak to New Orleans, Louisiana, for his own account, rests upon the production by the plaintiffs of extracts from the bill of lading book of the Grosse Tete, Baton Rouge & Opelousas Railroad Company, showing shipments by that road of cotton for the account of the defendant at different dates between October 29, 1873, and January 26, 1883, and by testimony as to the average weight of a bale of cotton and its value. In order to sustain this part of the judgment, which concerns transactions prior to the 14th of March, 1884, at which date defendant sets up a full settlement between Robert Beatty, Sr., of his antecedent acts of agency, this court will have to utterly disregard the document "C" found in the record. That paper was simply offered as a piece of evidence, and there was no pleading or prayer by the plaintiffs to support a substantive direct judgment by the District Court that it was a forgery. We have besides carefully examined the testimony in regard to it, and not only do we not concur with the court below in pronouncing it a forgery, but we are satisfied that the attack upon the genuineness of Robert Beatty's signature thereto has utterly failed.

The defendant in his testimony said: "Referring to a receipt of March, 1884, the same was actually signed by Robert Beatty, Sr., on the date indicated in said receipt."

We are bound to give effect to the declaration, unless the defendant in this case has sworn falsely and his contentions are based upon both forgery and perjury.

It would require evidence of a very strong character to justify any such conclusion. As not only property rights, but as a question of vaster importance, affecting the honor and integrity of Glenn D. Peak is involved in this matter, we think it well to place on the record the testimony upon the subject.

From the note of evidence it would appear that the document marked " C " having been offered in evidence, the plaintiff placed I. L. S. Hill (the husband of one of their number and the son-in-law of Robert Beatty, Sr.) on the stand, and a certain paper marked " F " bearing the signature of Robert Beatty, Sr. (offered for the purpose of showing that the signature of Robert Beatty, Sr., to the document marked " C " is not genuine, and that it is a forgery), having been submitted to him, said the " signature of Robert Beatty, Sr., to the document marked ' F ' is genuine."

The document " C " was then offered. The witness was then cross-examined by the defence and the following questions asked and answers given.

Q. What induced you to believe that the signature to the receipt marked " C " was a forgery?

A. I have never expressed the belief that it was a forgery.

Q. How did it happen that the document marked " F " was brought here?

A. There was a suspicion in the mind of Dr. Beatty, but I did not suspect it.

Q. Did you or any of the heirs ever see that receipt, so that it induced you to believe that it was a forgery, before you came here?

A. I never saw it myself until I came here. From what I know of the standing of Mr. Peak in South Carolina, I do not think he would be guilty of forging a document.

At this point defendant produced a document entitled " Deposition of Robert Beatty, Sr., No. 244, 15th Judicial District Court, Parish of Pointe Coupee, La., G. D. Peake vs. Margaret A. Young et al." marked " BB," and asked the witness to compare the handwriting on this document with the handwriting to the document marked " C," but plaintiffs' counsel objected, on the ground " that the document marked ' BB ' and offered to compare with the signature of Robert Beatty to the document marked ' C ' is not authenticated as the law directs, and is inadmissible in evidence."

The court overruled the objection and the plaintiffs took a bill of exceptions and the cross-examination was resumed.

Q. Mr. Hill, compare the signature to the document marked "F" and the document marked "C."

A. I think that the signature to the document marked "C" is not a forgery.

### Re-Examination.

A. I was intimately acquainted with the handwriting of Robert Beatty, Sr., during his lifetime. The signature of Robert Beatty, Sr., to the document marked " C " resembles his signature. I am certain that it looks like his signature. I have never professed to be an expert in handwriting, and I do not now.

### Recalled.

I am the son-in-law of Robert Beatty, Sr. I married one of his daughters. I am a brother-in-law of Glenn D. Peak, defendant in this suit. I was at the home of Robert Beatty, Sr., in the year 1886, and again in 1889. As I remember I had some conversation with Robert Beatty, Sr., in relation to his Louisiana plantation during those visits. I had a prospective interest in the Louisiana plantation—that is, my wife had. I have never heard of any settlement between Robert Beatty, Sr., and Mr. Glenn D. Peak within the last ten years until this receipt marked " C " was produced in court concerning the Louisiana property. I heard of this receipt through Judge Sherburne (plaintiffs' attorney) some two months ago. I think had a settlement been made I would likely have heard it, being intimate with the late Robert Beatty.

### Cross-Examined.

My wife is one of the plaintiffs in this suit. I think there was a very cordial, intimate, confidential and affectionate relationship existing between Robert Beatty, Sr., and Glenn D. Peak. Mr. Peak married one of the daughters of Robert Beatty, Sr., and Mr. Peak and myself married sisters. Mr. Robert Beatty said in 1886, and perhaps in 1889, that he was sorry that he had anything to do with Louisiana property, and was sorry to have spent any money on it, and often wished that he had left it alone, and he expressed a great desire several times to see Mr. Peak and to have a settlement with him.

### Re-Examined.

I suppose that Mr. Glenn D. Peak has not lived with his wife for about eight years. I guess this as to the time, but they are virtually

separated. Mr. Beatty had a very great affection for his daughter, Mrs. Peak, as he had for all his children.

### Recross-Examined.

So far as I know Mr. Peak has been on cordial terms with old man Beatty and with all the family as far as I know, despite the fact above mentioned.

*Lucien Grass*, a witness for plaintiffs, being shown documents marked "C" and "F," said:

"I can't say that the signatures were written by the same party; that the initials are not made alike."

### Cross-Examined.

Q. Compare the signature to the document marked "BB," and give your opinion as to the signatures on the documents marked "F" and "C"?

A. I should say that the signatures to the documents marked "BB" and "C" were written by the same party.

*Louis Lozano*, a witness for plaintiffs, being sworn, said:

"I have had some experience comparing handwriting and signatures."

Shown documents marked "F" and "C," said:

"It is possible that the signature may have been written by the same party—there is some similarity. The document marked 'C' looks like it had the signature of the oldest man.

### Cross-Examined.

Being shown documents marked "BB" and "C," said:

"The same similarities exist, and to the signature on the document marked 'F,' the similarity being more marked on documents marked 'BB' and 'C' than on document marked 'F.'"

*William J. Beatty*, one of the plaintiffs, being under oath (under commission), said:

"Some time since 1884, Robert Beatty, Sr., and Glenn D. Peak met at my house for the purpose of making some arrangement or coming to some understanding, the purport of which I do not remember. From conversations I had with Robert Beatty, Sr., on the way to his home he said nothing was done. I was not present during the time he and Peak were conversing."

### Cross-Question.

Did Robert Beatty, Sr., say anything concerning a settlement with Glenn D. Peak, his agent for the management of the Wests Oaks plantation, and if so, did he say that Peak had paid him all money due him from the West Oaks plantation, Louisiana, Iberville parish.

A. I never had such conversations with him.

It may be well to say that the document marked " F " bears date 6th of August, 1886, and that the document " BB " bears date August, 1882, (it being a paper formerly filed evidence as the deposition of Robert Beatty, Sr., in the suit No. 244 of the District Court for the parish of Pointe Coupee of Glenn D. Peak vs. Margaret A. Young et al., referred to in the proceedings), and that the interview between Robert Beatty and Peak, to which William J. Beatty refers, is doubtless the same as that which Peak himself refers to, in his testimony—the purpose of which was matters other than the settlement of the agency prior to the 14th of March, 1884—an interview at which no result was reached and which was postponed at Beatty's suggestion to another time, but which was never held on account of Beatty's death.

The testimony we have transcribed is the only evidence in the record bearing directly upon the question of the genuineness of the signature of Robert Beatty to the document " C."

Plaintiffs' counsel seek to sustain their position that that document is a forgery by a recital of facts from which they ask us to infer and presume that the act is not genuine. For instance, they say that Beatty would not have signed that paper in 1884, as it contradicts his statement in the document marked " BB," in which he says that he had paid Peak all his agency charges in 1882; that the instrument is suspicious, as it in general terms clears away an indebtedness of sixteen years without vouchers to corroborate the settlement—as it only appears after this suit was brought and Beatty was dead and as there were no witnesses to it.

We have carefully considered everything said in the brief on that subject, but we can not give to the facts alleged (some of which are themselves merely assumed) the force and effect contended for. The plaintiffs themselves are by no means certain of their own contention, for they say that these facts show that the settlement is FRAUDULENT and PROBABLY forged. If the document be authentic

there is no evidence in the record upon which to declare it "fraudulent."

We are of the opinion that the document is not a forgery, and being genuine the first portion of the judgment declaring it otherwise is erroneous and must be reversed. This conclusion carries with it the reversal of the judgment against Peak for $12,500, and eliminates all questions of his agency prior to 14th of March, 1884.

The judgment of the District Court against the defendant for $6770 subject to a credit of $1065 was reached by charging him with the full amount of all the moneys mentioned in his Exhibit "A," and rejecting all the items on Exhibit "B" with which he credits himself, with the exception of the single item of taxes, to the amount of $1065.

That the amount shown in Exhibit "A," for which the defendant was primarily liable, is correct, is conceded on all sides. We have, therefore, only to deal with the other exhibit. The district judge rendered a final judgment against the defendant on all the items thereof, with the single exception which we have stated.

It would appear that all the business of the defendant under his agency in Louisiana after 14th of March, 1884, was transacted through the house of Gumbel Bros. & Mayer and Ferdinand Gumbel & Co. To them was shipped and by them was sold all cotton, and to them were sent and by them were paid, all bills. These houses rendered to the defendant regular accounts, showing amounts received and disbursed, copies of which accounts have been filed in the record, marked "A," "B," "C," "D" and "E," or *Nos.* 1, 2, 3, 4 and 5, and are admitted to be correct transcripts from the books of these firms. These copies were offered by the plaintiffs themselves without qualification in their entirety—that is to say, without discriminating between their credit and debit sides.

The defendant subsequently swore to the payment by him of each and every item of these accounts (which accounts form the basis of the exhibits "A" and "B"), and testified that the payments were made for the use and benefit of Robert Beatty, Sr. It is true that the vouchers which were in the hands of Gumbel Bros. & Mayer and Ferdinand, Gumbel & Co., were not produced, in which the bills were doubtless itemized, but they were not called for, and no attempt was made to controvert Peak's testimony. It would certainly have been better had the vouchers been produced, but the

plaintiffs had gone far in the direction of dispensing the defendant from doing so by offering themselves the accounts in evidence, and admitting they were correct transcripts from the books of the firms. We are of the opinion that the defendant has under the circumstances made a sufficient showing of the correctness of the items of Exhibit "B."  19 An. 495; 29 An. 382.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the District Court decreeing document " C " to be a forgery, be and the same is hereby annulled, avoided and reversed, and that the judgment appealed from be so amended as to reject plaintiff's demand to the extent of $12,400, same being for transactions anterior to the 14th March, 1884, and covered by document " C," and so as to allow defendant credit for the sum of $3412.51, being the credits enumerated in document " B." It is further ordered, adjudged and decreed that the judgment of the District Court finally rejecting all other claims and demands of the defendant be annulled, avoided and reversed, and that all other claims, counter-claims and demands of the defendant be remitted to the lower court for a more complete restatement and the taking of additional evidence by all parties on a new trial thereof, and that for such purpose the cause be remanded to the lower court and therein reinstated.   It is further ordered that the plea of prescription as to the claim of the defendant for repetition of the amount claimed to have been paid by him to Robert Beatty, Sr., be left open.   It is further ordered, adjudged and decreed that, subject to the foregoing alterations, amendments and reservations, the judgment of the lower court be and the same is hereby affirmed, costs of appeal to be borne by the plaintiffs and appellees, those of the lower court to await final judgment.

### On Application for a Rehearing.

BREAUX, J.   The plaintiffs have directed part of their application, for a rehearing, to certain items allowed on the credit side of defendant's account, identified by the letter "B."

Upon re-examination of our opinion we have not discovered any ground for a rehearing as to these items of credit.

In reference to the other questions plaintiffs contend should now be decided, it is sufficient to state that, in remanding the case, we have not closed these issues; offering the least ground for consideration upon a recasting of the account.

Certain items claimed and question of their prescription, *vel non*, are left open to future action.

There is no good reason why the claim for restitution of a certain amount alleged to have been paid, on immovable property, and the plea of its prescription, should not be hereafter considered upon a final decision of the case.

Rehearing refused.